NUNAMAKER, APPELLEE, *v.*
BOARD OF ZONING APPEALS OF JERUSALEM TOWNSHIP, APPELLANT.

[Cite as Nunamaker *v.* Bd. of Zoning Appeals (1982), 2 Ohio St. 3d 115.]

(No. 82-9—Decided December 29, 1982.)

*Mr. Thomas J. Sheperak,* for appellee.

*Mr. Anthony G. Pizza,* prosecuting attorney, *Mr. Jeffrey S. Colturi* and *Mr. James A. Schuller,* for appellant.

*Per Curiam.* R.C. 519.14(C) authorizes township boards of zoning appeals to "[g]rant conditional zoning certificates for the use of land, buildings, or other structures if such certificates for specific uses are provided for in the zoning resolutions." Pursuant to this grant of authority, the zoning resolution for Jerusalem Township, Reno Section, Lucas County, permits the granting by appellant of "[e]xceptions"[1] for a variety of uses including

---

[1] Appellee raises the argument that an "exception" is not the same as a special permit or a conditional zoning certificate. As noted in *Boston* v. *Montville Twp. Zoning Bd. of Appeals* (1972), 32 Ohio Misc. 118 [61 O.O.2d 184], a special permit is evidenced by a conditional zoning certificate. The terms special permit and exception have been used interchangeably in zoning codes, although special permit appears to be the preferred terminology. See 3 Anderson, American Law of Zoning (2d Ed.) 356, Section 19.01. "Special exception" was first employed in Section 7 of the Standard State Zoning Enabling Act (1926) to designate a species of administrative permission which allows a property owner to put his property to a use which the regulations expressly permit under conditions specified in the zoning regulations. This definition

"[y]acht clubs and public or private facilities for renting, docking, storage, and servicing of pleasure boats."[2] The zoning resolution is, however, as noted by the court of appeals, "inartfully drawn," and the question presented in this cause is whether an exception for a marina is allowable pursuant to the resolution.

Both Sections 1-B-5 and 10-A-2 (as conformed to 11-B-2) of the resolution refer to a showing of "practical difficulties" or "unnecessary [or "undue"]

---

is substantially similar to that of special permit announced in *Boston* v. *Montville Twp. Zoning Bd. of Appeals, supra.* Accordingly, for the purposes of this decision, we will employ the term "exception" to mean a use permitted by a zoning resolution which may be authorized under the conditions specified in the resolution.

[2] Section 11-B-3(h) of the zoning resolution for Jerusalem Township, Reno Section. The relevant text of Section 11-B provides:
"The Administrative Board shall have the following powers:
"* * *

"3. *Exceptions*

"a) Permit in the 'A' or 'R' Districts, public parking areas or storage garages adjacent to any existing or proposed use in the multiple dwelling, commercial or industrial districts.

"b) Permit the modification of the automobile parking space or loading space requirements where, in the particular instance, such modification will not be inconsistent with the purpose and intent of such requirements; or permit (a) the waiver of the requirement that automobile parking space be provided on the same lot with a dwelling, if other suitable and convenient parking space is available within or without a building; or (b) the dual use of parking facilities (*i.e.* by stores during the day and theatres during the evening) provided there is no overlapping of use and the parking space requirements for each building or use are complied with during each period.

"c) Permit the addition or enlargement of a nonconforming building or structure, provided such addition or enlargement complies with all height and area regulations of the district in which it is located and that the total aggregate floor area included in all such separate additions or enlargements does not exceed twenty (20) per cent of the floor area contained in said building or structure.

"d) Permit in districts limiting the height to two and one-half (2½) stories thirty-five (35) feet, or three (3) stories forty-five (45) feet, schools, hospitals, sanitariums, institutions, churches and other similar uses allowed under the use regulations of this ordinance, to be erected to a height not exceeding six (6) stories or seventy-five (75) feet, provided that the front and side yard requirements for such buildings in the 'R' Districts are complied with.

"e) Permit such modification of the height and area regulations as may be necessary to secure an appropriate improvement of a lot which is of such shape, or so located with relation to surrounding development or physical characteristics, that it cannot otherwise be appropriately improved without such modification.

"f) Permit trailers, temporary buildings and uses for periods not to exceed one (1) year in any District of the Township.

"g) Permit in the 'M-1' and 'M-3' Districts the temporary use of areas or portions thereof for dwelling purposes in demountable or other temporary buildings, under appropriate conditions and safeguards, pending the need of the area for industrial purposes, provided suitable sanitary and other facilities can be made available without extra expense to the Township.

"h) Yacht clubs and public or private facilities for renting, docking, storage, and servicing of pleasure boats.

"i) In approving applications for variances, the Board shall have authority to impose such conditions as it deems necessary to protect the best interests of the surrounding property or neighborhood and the Master Plan."

hardships" as criteria for the granting of an exception.[3] These provisions confuse variance and exception concepts:

"A variance authorizes a land owner to establish or maintain a use which is prohibited by the zoning regulations. Thus, a variance results in a deviation from the literal import of the ordinance or resolution and may be granted only upon a showing of practical difficulties or unnecessary hardship.

"A special permit, which is evidenced by a conditional zoning certificate, authorizes a use which is permitted by zoning regulations, subject to the issuance of such a permit or conditional certificate. Thus, the special permit results in the establishment or maintenance of a use in the location and under the circumstances mandated by the zoning ordinance or resolution, and such permit may be granted upon whatever terms are imposed by the zoning ordinance or resolution." *Boston* v. *Montville Twp. Zoning Bd. of Appeals* (1972), 32 Ohio Misc. 118, 120-121 [61 O.O.2d 184].

Considerations of practical difficulties and unnecessary hardships are not, therefore, commonly relevant to the granting of an exception. Rather, the authority of appellant to grant exceptions as permitted pursuant to R.C. 519.14 is limited by standards sufficient to contain the discretion of the board of zoning appeals. 3 Anderson, American Law of Zoning (2d Ed.) 371, Section 19.09; 6 Rohan, Zoning and Land Use Controls 44-37, Section 44.03; and 3 Rathkopf, Law of Zoning and Planning (4 Ed.) 41-35, Section 41.09. In the instant case, the discretion of appellant to grant exceptions for "[y]acht clubs and public or private facilities for renting, docking, storage, and servicing of

---

[3] Section 1-B-5 of the zoning resolution provides:

"Exceptions to these regulations in specific cases may be authorized by the Board of Zoning Appeals where there are practical difficulties or unnecessary hardships in carrying out the strict letter of this Resolution providing such exception is in harmony with the general purpose and intent of the Resolution and in accordance with the procedures specified in Section 11. Hardship shall be based on physical limitations of the land and does not encompass financial considerations."

Section 10, entitled "EXCEPTIONS," provides:

"A.  GENERAL

"1.  In view of the trend toward the development of group houses, planned neighborhoods, shopping centers or other planned developments intended for greater convenience or utility in the public interest which may necessitate variations from existing zoning classifications or regulations, such variations may be permitted provided that a site layout showing location of buildings and yard requirements is first approved by the Commission. Upon approval by the Commission and subsequent approval by the Board of Trustees and the filing of such layout with the County Recorder, such approved variations shall be, and become part of the zoning regulations, subject to such further changes as may be made in the prescribed manner.

"If the construction of buildings or improvements in accordance with the approved layout does not proceed within 24 months from the date of the zoning change or within such reasonable time as may be extended by the Commission, the affected areas will revert to the classifications existing before such changes are made upon approval of such action by the Board of Trustees.

"2.  Other exceptions based on hardship may be given by the Board of Zoning Appeals in conformance with Section 11.

"3.  In conformance with the State of Ohio enabling legislation, agricultural buildings and uses, public utilities and railroads are exempt from all regulations of this Resolution."

pleasure boats" is so severely constrained by Section 11-B-3(h), that appellant's function is reduced to one of determining whether Fleitz's proposed use comports with the definition of the terms used in the section. As such, the zoning resolution cannot be said to permit such discretion in appellant so as to permit it to grant exceptions in an arbitrary manner, and is, therefore, not an improper grant of legislative power.[4]

We find that the decision of appellant to grant an exception for Fleitz's proposed use is supported by the preponderance of substantial, reliable and probative evidence and is not arbitrary, capricious or unreasonable. Accordingly, the judgment of the court of appeals is reversed.

*Judgment reversed.*

CELEBREZZE, C.J., W. BROWN, SWEENEY, LOCHER, HOLMES, C. BROWN and KRUPANSKY, JJ., concur.

---

[4] Additionally, an issue was raised below as to the jurisdiction of the board of zoning appeals in granting of a variance for the Fleitz marina. Given our disposition of the exception issue, it is not necessary to address the variance issue.